UNITED STATES of America,
Plaintiff-Appellee,

v.

Tony William WABLES,
Defendant-Appellant.

No. 82–3009.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 13, 1984.

Decided April 9, 1984.

John J. Casey, Springfield, Ill., for defendant-appellant.

Gregory Harris, Asst. U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, and ESCHBACH and FLAUM, Circuit Judges.

442

FLAUM, Circuit Judge.

This is an appeal from the defendant's convictions for conspiracy to possess marijuana with intent to distribute and for possession of marijuana with intent to distribute. For the reasons set forth below, we affirm the convictions.

The facts in this case were presented at trial solely through the testimony of government witnesses.[1] A summary of this testimony follows. In the early morning of April 29, 1981, Vernon Michels, James Lee Klinefelter, and Don Lipscomb arrived in Springfield, Illinois, with a load of six bales of marijuana. They contacted Richard Leinen, a friend of Klinefelter, and asked him to find a place in which to store the marijuana for a few days while they attempted to find buyers. Leinen, in turn, relayed the request to the defendant, who took Michels, Klinefelter, and Lipscomb to a garage on Cornell Street ("Cornell garage") that was attached to the residence of Dennis Hanger and George Taylor. The defendant previously had spoken with Hanger and had arranged for the use of the garage as a storage facility for the marijuana. Failing in their attempts to sell the marijuana, Michels, Klinefelter, and Lipscomb transported the marijuana to Carbondale, Illinois, on May 2, 1981. Before leaving, however, they obtained assurances from the defendant that they could use the Cornell garage in the future for storing marijuana.

About a month later, on June 1, Michels returned to Springfield with James McGowen and Daniel Richardson. Michels, McGowen, and Richardson brought approximately 2500 pounds of marijuana, which they stored in the Cornell garage at the direction of the defendant. During the month of June, the defendant obtained 609.8 pounds of the marijuana on consignment. When Richardson moved the marijuana to a farmhouse in Edinburg, Illinois, during the second week in July, he left a small amount of marijuana at the Cornell garage for the defendant to purchase. While the marijuana was in Edinburg, the defendant procured 150.1 pounds of marijuana from Richardson. During the first or second week of August, Richardson transferred the marijuana from Edinburg to a farmhouse near Andrew, Illinois. Between that time and August 24, 1981, the defendant obtained 198 pounds of marijuana from the Andrew farmhouse.

On September 1, 1981, agents of the Drug Enforcement Administration ("DEA") executed a search warrant at the Andrew farmhouse, arrested Richardson, and seized approximately 1000 pounds of marijuana. In addition, the DEA agents seized notebooks and records that reflected that, between June 2, 1981, and August 31, 1981, the defendant had acquired 972.9 pounds of marijuana and had paid $143,005 to Richardson and to others.

A federal grand jury returned a fourteen-count indictment on August 23, 1982, charging the defendant with one count of conspiracy to possess with intent to distribute over a thousand pounds of marijuana, and with thirteen counts of possession of marijuana with intent to distribute. During a pretrial conference on October 25, 1982, the prosecutor informed the trial court that the government had supplied all discovery materials to the defendant, including pretrial statements of prosecution witnesses, which must be produced prior to the cross-examination of the witnesses, pursuant to the Jencks Act, 18 U.S.C. § 3500 (1982).[2] The defense counsel, how-

1. After the government rested its case, the defendant did not present any evidence in his defense.

2. The Jencks Act reads, in relevant part, as follows:
§ 3500. Demands for production of statements and reports of witnesses

(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has

ever, stated that he had not received any Jencks Act material relating to Richard Leinen, a possible government witness. The prosecutor replied that the government did not have any such material because Leinen neither testified before the grand jury nor gave any statements to government agents.

On the second day of the defendant's trial, Richard Leinen testified for the prosecution. During cross-examination, Leinen indicated that he had been interviewed by a number of federal agents prior to trial and that the agents took notes as they were talking to him. The defense counsel then approached the bench and moved for production of these notes, stating that he was entitled to them under the Jencks Act. The prosecutor replied that such production was not required because Leinen never reviewed the notes. The court reserved ruling on the matter, on the condition that the witness remain available. After the defense counsel completed his cross-examination and the court excused the jury for lunch, a bench conference took place, during which the prosecutor expressed the position that the Jencks Act requires production of a government agent's handwritten notes only if the witness has reviewed them and has adopted them. Nonetheless, the prosecutor offered to produce voluntarily the notes regarding Leinen's pretrial interview. The court, on the other hand, interpreted the Jencks Act to require production of any notes that are a substantially verbatim recital of the witness's oral statement. The defense counsel agreed with the court's interpretation and voiced his concern that the government may not have produced notes regarding the pretrial interviews of other government witnesses. The court requested the prosecutor to inquire as to whether any law enforcement agents had taken substantially verbatim notes during their interviews with all the witnesses. Later that afternoon, the government modified its view of the Jencks Act and conceded that it had "at least a minimal obligation to produce [the agents'] notes for examination of at least the Court." Trial Tr. at 365.

On the following morning, the prosecutor presented to the court and to the defense

---

testified on direct examination in the trial of the case.

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

(c) If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use.... Whenever any statement is delivered to a defendant pursuant to this section, the court in its discretion, upon application of said defendant, may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial.

(d) If the United States elects not to comply with an order of the court under subsections (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

(e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500 (1982).

counsel documents of supplemental discovery, which consisted primarily of notes that law enforcement agents took while interviewing government witnesses.[3] The defense counsel moved to strike the testimony of the three witnesses who had already testified, Klinefelter, Michels, and Leinen. The trial court denied the motion, holding that when a court is faced with the untimely production of pretrial statements, it is not limited under the Jencks Act to either striking testimony or declaring a mistrial. The court ruled that it had discretion "to turn to other alternatives," Trial Tr. at 437, and it decided to provide the defendant with the maximum opportunity to make use of the supplementary discovery materials with respect to the witnesses who had already testified.[4] The court called a recess of approximately three hours to give the defense counsel time to examine the supplementary discovery documents, and it indicated that it would allow the defense counsel to recross-examine any witness. After the recess, the defense counsel recalled Michels, Klinefelter, and Leinen to the witness stand and engaged in further cross-examination in the presence of the jury.

After the presentation of all the evidence and prior to closing arguments, the prosecutor expressed his concern that the defense counsel would argue, as a defense to the conspiracy count, that the defendant was merely a purchaser of marijuana. During the ensuing bench conference, the court extensively questioned the defense attorney about his theory of defense. The court explained, in considerable detail, the law of conspiracy, and it defined the scope of the conspiracy with which the defendant was charged in Count 1 of the indictment. The court concluded the discussion by stating that it would not interrupt the defense counsel's closing argument, but that it would take appropriate action afterward if it found that the defense counsel had misstated the law of conspiracy or had mischaracterized the scope of the conspiracy count. Closing arguments then took place, and the court did not deem it necessary to take any corrective action.

The jury found the defendant guilty of the conspiracy count and guilty of eight counts of possession.[5] Approximately one month later, on December 8, 1982, the government filed a motion for leave to file supplemental notes and memoranda relating to pretrial interviews of two government witnesses, Michels and Richardson. The court granted the motion and, after examining the notes and memoranda, the court ruled that some parts of the memorandum pertaining to Michels constituted Jencks Act statements. It held, however, that the government's failure to produce this material during trial was harmless error.

In appealing his convictions, the defendant raises four issues for review. First, the defendant claims that the trial court erred both in refusing to strike prosecution testimony as a consequence of the untimely production of Jencks Act material during trial and in finding the post-trial production of Jencks Act material to be harmless er-

3. In addition to law enforcement agents' handwritten notes, the supplementary discovery material contained several typewritten memoranda and a few transcripts of interviews of witnesses.

Upon presenting the supplementary discovery material, the prosecutor stated that he still was attempting to locate possible notes relating to two pretrial interviews of Daniel Richardson. We note, however, an absence of any further reference to these notes in the record. Given the diligence with which the government acted to provide all Jencks Act material on the third day of trial and to provide such material even after the end of trial, we conclude from this absence that the prosecutor was unable to locate the missing notes.

4. In a memorandum opinion issued on October 28, 1982, the trial court ruled that, when a court is faced with the untimely production of Jencks Act material, it "may proceed with the trial without striking testimony but with appropriate arrangements to minimize whatever disadvantage defendant has suffered as a result of the government's failure to disclose." Mem. Opinion of Oct. 28, 1982, at 3.

5. The jury was unable to reach a verdict on the five remaining counts of possession, and the court dismissed these counts without prejudice.

ror. Second, the defense argues that the records seized by DEA agents at the Andrew farm were untrustworthy and that their admission into evidence was error. Third, the defendant contends that the trial court improperly restricted his closing argument. Fourth, the defendant claims that the trial court erred in refusing to find that marijuana is improperly classified as a Schedule I non-narcotic controlled substance and in denying the defendant's request for a hearing on the issue.

## JENCKS ACT VIOLATIONS

The Jencks Act[6] provides that, after the direct examination of a government witness in a federal criminal trial, the trial court shall order the production of any statement made by the witness that relates to the subject matter of the witness's testimony. 18 U.S.C. § 3500(b) (1982). "Statement" is defined as (1) a written statement that is signed or otherwise approved by the witness, or (2) a "substantially verbatim recital" of the witness's oral statement made to a government agent, or (3) the witness's grand jury testimony. 18 U.S.C. § 3500(e)(1)–(3) (1982). If the prosecutor claims that a statement, as defined in subsection (e), contains matter that does not relate to the subject matter of the witness's testimony, the trial court must order the prosecutor to produce the statement for the inspection of the court. 18 U.S.C. § 3500(c) (1982). No such *in camera* inspection is mandated by the language of the Jencks Act if the prosecutor claims that a document is not a "statement" within the meaning of subsection (e). However, in such situations, the United States Supreme Court has ruled that it is the trial court's responsibility to inspect the document and, after conducting an inquiry outside the presence of the jury, to determine the nature of the document. *See Campbell v. United States*, 365 U.S. 85, 92, 81 S.Ct. 421, 425, 5 L.Ed.2d 428 (1961); *Palermo v. United States*, 360 U.S. 343, 354, 79 S.Ct. 1217, 1225, 3 L.Ed.2d 1287 (1959). *See also* *Goldberg v. United States*, 425 U.S. 94,

108–09, 96 S.Ct. 1338, 1347, 47 L.Ed.2d 603 (1976). Applying this principle, this circuit has held that whether a document is a "statement" under the Jencks Act is a question for the trial court, not for the government. *See United States v. Keig*, 320 F.2d 634, 637 (7th Cir.1963). *Accord United States v. Chitwood*, 457 F.2d 676, 678 (6th Cir.), *cert. denied*, 409 U.S. 858, 93 S.Ct. 141, 34 L.Ed.2d 103 (1972); *Saunders v. United States*, 316 F.2d 346, 348–50 (D.C.Cir.1963); *Ogden v. United States*, 303 F.2d 724, 736–37 (9th Cir.1962); *Bary v. United States*, 292 F.2d 53, 56 (10th Cir.1961).

### Untimely Production of Pretrial Statements Prior to the Conclusion of Trial

■ In the present case, the prosecutor produced government agents' notes after the cross-examination of Leinen, Klinefelter, and Michels. The prosecutor explained that he was not aware that these notes were Jencks Act "statements" and that, in any event, the notes did not relate to the witnesses' direct testimony. This failure to timely produce the documents for inspection by the trial court both hindered the court's discharge of its responsibility under the Jencks Act, as discussed in *Campbell, Palermo,* and *Goldberg,* and specifically violated subsection (c) of the statute, which requires the trial court to determine whether pretrial statements relate to the direct testimony of government witnesses.

At trial, the defense counsel argued that, in light of the prosecutor's untimely production of pretrial statements, the trial court was restricted by subsection (d) of the Jencks Act to either declaring a mistrial or striking the testimony of Leinen, Klinefelter, and Michels. The prosecutor, on the other hand, agreed with the trial court's ruling that the court was not so restricted and that the court could use its discretion to remedy the tardiness of the production by allowing the defendant to recall the government witnesses for further cross-examination.

**6.** For relevant excerpts of the Jencks Act, see *supra* note 1.

Subsection (d) of the Jencks Act provides that, when the prosecutor "elects not to comply" with the production requirements of subsections (b) and (c), the court either shall strike the testimony of the witness or shall declare a mistrial. 18 U.S.C. § 3500(d) (1982). It is unclear, from the language of the statute, whether this limited choice of sanctions applies in cases where the government fails to present a statement prior to the cross-examination of its witness, but then produces it as quickly as possible when it first discovers its dereliction of duty under the Jencks Act.

■ In *United States v. Pope*, 574 F.2d 320 (6th Cir.), *cert. denied*, 439 U.S. 868, 99 S.Ct. 195, 58 L.Ed.2d 179; 436 U.S. 929, 949, 98 S.Ct. 2828, 2856, 56 L.Ed.2d 774, 792 (1978), the prosecutor produced the pretrial statement of a witness the day after the witness had testified. The prosecutor represented to the trial court that he had forgotten about the statement. The trial court did not strike the witness's testimony or declare a mistrial, but instead afforded the defense lawyers the opportunity, which they did not take, to re-examine the witness. In affirming the conviction, the Sixth Circuit ruled that a trial court is limited to the remedies listed in subsection (d) of the Jencks Act only when the government makes a conscious choice not to disclose a witness's pretrial statement. Where the government may have violated the Jencks Act merely through oversight or negligence, the trial court may use its discretion to formulate "such a remedy as the justice of the case may require under the circumstances." The court then found that, in the absence of bad faith on the part of the government, and in light of the defendants' opportunity to cure any prejudice by recalling the witness, the trial court did not abuse its discretion. *Id.* at 327.

The First Circuit reached a similar result in *United States v. Tashjian*, 660 F.2d 829 (1st Cir.), *cert. denied*, 454 U.S. 1102, 102 S.Ct. 681, 70 L.Ed.2d 646 (1981), where a government witness revealed the existence of a pretrial statement during his cross-examination. The defense attorney sought access to this material, and his demand led to an inquiry into whether the government had failed to disclose other Jencks Act material. The following day, the government produced Jencks Act material pertaining to three additional government witnesses who had already testified. The trial court denied the defendant's motion for either dismissal of the indictment or mistrial. It found that the government had not acted in bad faith and that the newly discovered statements would have added little to the cross-examinations of the witnesses. The trial court then ordered the government to have all the witnesses available for further cross-examination. The First Circuit upheld the trial court's actions, finding them "unassailable" and citing its prior decision in *United States v. Principe*, 499 F.2d 1135, 1139 (1st Cir.1974). The court in *Principe* had ruled that subsection (d) of the Jencks Act does not require striking a witness's testimony or declaring a mistrial for every failure to produce, no matter how harmless or innocent. Instead, "a weighing of considerations is needed to determine the appropriate course." *Id.* at 1139. *See also United States v. Heath*, 580 F.2d 1011, 1018–19 (10th Cir.1978) (trial court adequately remedied government's failure to disclose Jencks Act statements by ordering production of statements and allowing recross-examination of witnesses, where government acted in good faith, defendant could not show prejudice, and no motion to strike testimony was made), *cert. denied*, 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42 (1979); *United States v. Polizzi*, 500 F.2d 856, 892–94 (9th Cir.1974) (where government's failure to disclose document until after start of witness's cross-examination "appear[ed] clearly to be harmless and [was] not a willful avoidance and egregious dereliction of the prosecutor's statutory obligation," the trial court did not need to either strike testimony or declare a mistrial as provided by subsection (d) of the Jencks Act), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975); *United States v. Gottlieb*, 493 F.2d 987, 993–94 (2d Cir.

1974) (where prosecutor had good faith belief that no Jencks Act material existed, but then produced such material in the middle of trial, defense counsel's effective recross-examination of government witness obviated any significant prejudice).

 In each of the foregoing cases, the court held, either expressly or implicitly, that when the government belatedly produces pretrial statements without any motive to suppress evidence and when any prejudice resulting from the tardy production of statements is curable at trial, the government has not "elect[ed] not to comply" with the production requirements of the Jencks Act. Therefore, the trial court is not limited to the sanctions listed in subsection (d), but may use its discretion to fashion appropriate remedies. We agree with this interpretation of subsection (d). To hold otherwise—to require either striking of testimony or declaring a mistrial when the government has not acted in bad faith and when error is curable—would be unnecessarily punitive. It also would be inconsistent with the overall purpose of the Jencks Act, which is to protect the government's investigative files from unwarranted disclosure while insuring the availability of documents that are necessary to afford defendants an adequate opportunity to impeach prosecution witnesses. 103 Cong. Rec. 16,487 (1957); S.Rep. No. 981, 85th Cong., 1st Sess. 3, *reprinted in* 1957 U.S. Code Cong. & Ad.News 1861, 1862.[7]

 Turning to the facts of the present case, we note that the trial court stated that it did not conduct a formal inquiry into the circumstances under which the government failed to disclose its agents' notes regarding pretrial witness interviews. Mem. Opinion of Oct. 28, 1982, at 2. While such an inquiry and a specific finding of good faith are normally critical to determining that the government has not flouted the purpose of the Jencks Act, we find in this case that the trial court's extensive, though informal, inquiries posed during a series of bench conferences, together with its specific articulation of its lack of reservations about the government's good faith, *see id.*, are adequate to support the conclusion that the government had no intention to suppress evidence. This conclusion is further bolstered by the government's diligence in gathering and producing all pretrial statements within twenty-four hours of Leinen's cross-examination, when it became apparent that such production was mandated by the Jencks Act. In addition, we find that there was ample opportunity for the elimination of prejudice in this case. The government's error was discovered on the second day of trial, while the government was still presenting its evidence. At that point in the trial, any prejudicial effects of the error were curable through immediate production of the statements and recross-examination of the government witnesses.

 Since the record reveals no bad faith on the part of the government and since it was possible to eliminate any prejudice resulting from the tardy production of pretrial statements, we hold that the trial court was not limited to the sanctions listed in subsection (d) of the Jencks Act. We

---

7. When the good faith of the government is in question, the statute's goal of preventing only unwarranted disclosures is frustrated, and the trial court can infer that the government "elect[ed] not to comply" with the statute. *See United States v. Kasouris,* 474 F.2d 689, 691–92 (5th Cir.1973) (where "what may once have been characterized as mere [prosecutorial] inadvertence had over a period of two days of repeated demands and assurances turned toward deliberate suppression," court found that "prosecutor's failure to deliver the document when first requested [was] deemed to be an implied election not to produce," and sanctions listed in subsection (d) were applicable). Similarly, the tardy disclosure of Jencks Act statements when there is no possibility of curing the error undermines the statute's goal of affording defendants an adequate opportunity to impeach prosecution witnesses, and the strict remedies of either striking testimony or declaring a mistrial are necessary. *See United States v. Aaron,* 457 F.2d 865, 868–69 (2d Cir.1972) (after defense counsel learned of undisclosed Jencks Act statement during cross-examination of government witness and expressed "open consternation" in the presence of the jury, "any attempt to impeach ... would have made him appear to be belaboring a bad point," and mistrial should have been granted under subsection (d)).

further hold that the court did not abuse its discretion by requesting the immediate production of the undisclosed statements and by granting the defense adequate opportunity to review the material and to recross-examine government witnesses.

### Post-Trial Production of Jencks Act Statements

The defendant argues that the trial court erred in finding that the post-trial production of Jencks Act statements pertaining to Michels was harmless error.[8] According to the defendant, "[n]either the prosecutor nor the judge can properly determine the value of the withheld statements in the operation of the defendant's defense." Appellant's Brief at 10. The government responds that the trial court's ruling was correct because, for impeachment purposes, these statements were cumulative.

■ The Supreme Court has held that where a defendant is prevented from reviewing a witness's pretrial statements prior to the witness's cross-examination, in violation of the Jencks Act, and the error is not cured at trial, a harmless error analysis is applicable. *Rosenberg v. United States*, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959). However, "[s]ince courts cannot 'speculate whether [Jencks Act material] could have been utilized effectively' at trial, ... the harmless error doctrine must be strictly applied...." *Goldberg v. United States*, 425 U.S. 94, 111 n. 21, 96 S.Ct. 1338, 1348 n. 21, 47 L.Ed.2d 603 (1976) (quoting

*Clancy v. United States*, 365 U.S. 312, 316, 81 S.Ct. 645, 648, 5 L.Ed.2d 574 (1961)). Thus, in cases involving the failure to produce Jencks Act statements during trial, this circuit has found harmless error only when it is "perfectly clear" that the nondisclosure of Jencks Act statements did not prejudice the defendant. *United States v. Esposito*, 523 F.2d 242, 247–48 (7th Cir. 1975), *cert. denied*, 425 U.S. 916, 96 S.Ct. 1517, 47 L.Ed.2d 768 (1976). *See also United States v. Cleveland*, 507 F.2d 731, 736 (7th Cir.1974) (reversible error found where it was not "at all clear that cross examination of [government] witness was not hampered by denial of defendant's [Jencks Act] request").[9]

■ In the present case, the memorandum relating to Michels that the government produced after the defendant's trial ("Michels memorandum") contained accounts of Michels's illegal drug-trafficking activities and earnings in the Quad Cities area of Illinois. We agree with the trial court that the substantially verbatim statements in the Michels memorandum were related to Michels's testimony at trial and should have been produced prior to cross-examination, pursuant to the Jencks Act. However, in light of the many notes regarding these same illegal activities and earnings, which the government produced at trial and which the defense attorney reviewed prior to Michels's recross-examination,[10] we find it "perfectly clear" that

---

8. Neither at the post-trial motions conference nor in his brief has the defendant specifically argued that the memorandum regarding a pretrial interview with Daniel Richardson, which the government produced after trial, was a Jencks Act statement. After reviewing the record, we hold that, even if it were, the nondisclosure of this memorandum was harmless error.

9. Although this court did not articulate the "perfectly clear" standard in finding harmless error in *United States v. Robinson*, 585 F.2d 274, 281 (7th Cir.1978) (*en banc*), *cert. denied*, 441 U.S. 947, 99 S.Ct. 2171, 60 L.Ed.2d 1051 (1979), the very minimal impeachment value of the undisclosed Jencks Act statement in that case implicitly satisfied this standard.

10. In arguing his post-trial motion for a new trial, the defense counsel called attention to a statement in the Michels memorandum that referred to $250,000 worth of business that Michels had conducted with Phil Rosales, who lived in the Quad Cities area and who had purchased three to four hundred pounds of marijuana from Michels. Post-Trial Motions Tr. at 1068–69. The defense counsel asserted that this information would have been useful during Michels's cross-examination. Yet, one of the documents that the government had produced on the third day of trial, and that the defense counsel had reviewed prior to recross-examining Michels, made clear reference to Rosales's purchase of three to four hundred pounds of marijuana from Michels. Mem. of FBI Agent Jon Osgood re: Michels's interview on Aug. 13, 1982, at 1. This document also reported Mi-

the nondisclosure of the Michels memorandum did not prejudice the defendant. We therefore affirm the district court's finding of harmless error.

## ADMISSIBILITY OF BUSINESS RECORDS

The defendant maintains that the records seized by DEA agents from the Andrew farmhouse were not admissible under the business records exception to the hearsay rule. *See* Fed.R.Evid. 803(6). The defendant contends that the extensive explanations of the records put forth by Daniel Richardson at trial rendered the records untrustworthy because they could not "speak for themselves." Appellant's Brief at 12. Moreover, the defendant claims that Richardson should not have been allowed to testify about entries of which he had no independent recollection.

 It is clear that, in admitting documents under the business records exception to the hearsay rule, "the testimony of the custodian or otherwise qualified witness who can explain the record-keeping of his organization is ordinarily essential." 4 Weinstein, Evidence ¶ 803(6)[02] (1981). *See also Coughlin v. Capitol Cement Co.,* 571 F.2d 290, 307 (5th Cir.1978). Such testimony establishes the regular practices and procedures surrounding the creation of the records, the very elements that are necessary for a finding of trustworthiness. *See Louisville & Nashville Railroad Co. v. Knox Homes Corp.,* 343 F.2d 887, 895 (5th Cir.1965). Therefore, in the present case, Richardson's explanations of the various entries in the business records were not a bar to their admissibility.

 Furthermore, we quickly dispose of the defendant's contention that Richardson's lack of independent recollection rendered the records inadmissible. The business records exception to the hearsay rule clearly does not require that the witness have personal knowledge of the

entries in the records. The witness need only have knowledge of the procedures under which the records were created. *See, e.g., Rosenberg v. Collins,* 624 F.2d 659, 665 (5th Cir.1980); *United States v. Reese,* 568 F.2d 1246, 1252 (6th Cir.1977). Thus, Richardson's lack of memory with regard to the specific entries in the records does not affect their admissibility under Fed.R. Evid. 803(6).

## LIMITATION ON CLOSING ARGUMENT

The defendant contends that the trial court improperly restricted his closing argument by preventing him from arguing that the defendant's mere purchase and sale of marijuana could not make him a part of the conspiracy to possess and distribute over a thousand pounds of marijuana.

 It is beyond question that "it [is] for the judge, not counsel, to explain the law to the jury." *United States v. Kramer,* 711 F.2d 789, 794 (7th Cir.1983). In addition, a trial court may exercise broad discretion in controlling closing arguments and in "ensur[ing] that argument does not stray unduly from the mark." *Herring v. New York,* 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 (1975). *See also United States v. Grabiec,* 563 F.2d 313, 319 (7th Cir.1977). From our careful review of the record in the present case, we conclude that the trial court, during a lengthy discussion with the defense counsel prior to closing arguments, accurately explained the law of conspiracy, as applied to these facts. Since it was the court's responsibility to present this explanation to the jury in a clear manner, the court did not abuse its discretion by requiring the defense counsel to argue consistently with the correct law.

## CLASSIFICATION OF MARIJUANA AS A SCHEDULE I NON–NARCOTIC SUBSTANCE

The defendant claims that the classification of marijuana as a Schedule I non-nar-

chels's estimate that gross sales from drug-trafficking in the Quad Cities area amounted to

$25,000 a week. *Id.* at 2.

cotic controlled substance, pursuant to 21 U.S.C. § 812(b)(1) (1982), is improper because the accepted medical use of marijuana in the treatment of both glaucoma and cancer prevents marijuana from meeting the "no currently accepted medical use" standard set forth for Schedule I substances. 21 U.S.C. § 812(b)(1)(C) (1982). According to the defendant, the Attorney General is required, under section 812, to update and republish the schedules of controlled substances every year, and by improperly allowing marijuana to remain a Schedule I substance, the Attorney General has violated this duty. The defendant further argues that the trial court erred by failing to conduct a hearing on this issue.

■■■ In assessing the defendant's argument, we find 21 U.S.C. § 811(a) (1982) to be very instructive. This statutory provision, entitled "Authority and Criteria for Classification of Substances" clearly states that the Attorney General *may* (1) remove any drug or substance from one schedule and place it in another if he makes appropriate findings, or (2) remove any drug or substance from the schedules if he finds that it does not meet the requirements for any schedule. Several circuits have interpreted this provision to grant the Attorney General discretion and "not to mandate the annual reevaluation of the status of each controlled substance." *United States v. Rosa*, 562 F.2d 205, 206 (2d Cir.1977), *cert. denied*, 434 U.S. 1048, 98 S.Ct. 895, 54 L.Ed.2d 799 (1978). *See also United States v. Eddy*, 549 F.2d 108, 113 (9th Cir.1976). We find this interpretation persuasive, and we hold that the proper statutory classification of marijuana is an issue that is reserved to the judgment of Congress and to the discretion of the Attorney General. The trial court in the present case thus acted properly in refusing to reclassify marijuana. Furthermore, the court's failure to conduct a hearing was not error.

Accordingly, we affirm the defendant's convictions.