NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued January 28, 2009
Decided February 3, 2009

**Before**

WILLIAM J. BAUER, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 08-1365

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee,* <br><br> *v.* <br><br> MAURICE WILBON, <br> *Defendant-Appellant.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. <br><br> No. 06 CR 935-1 <br><br> John W. Darrah, <br> *Judge.* |

**ORDER**

Maurice Wilbon was charged with robbing a bank.  *See* 18 U.S.C. § 2113(a).  He moved to suppress his confession as involuntary due to the influence of cocaine and coercive police tactics.  The district court denied the motion, and a jury found Mr. Wilbon guilty.  He was sentenced to 225 months' imprisonment.  On appeal Mr. Wilbon challenges only the denial of his motion to suppress.  Because the district court correctly denied the motion, we affirm.

In December 2005 three men robbed a First Bank branch in Chicago.  FBI Agent Daniel McCune, who was investigating the bank robbery, believed Wilbon was one of the robbers.  So while Wilbon was incarcerated for an unrelated crime, Agent McCune

transferred a confidential informant named "Warren" into the same prison. Ultimately, the FBI paid Warren approximately $7,000 for his assistance in obtaining information from Wilbon.

After both men were released from custody, Warren kept in touch with Mr. Wilbon and recorded several of their conversations. These conversations revealed that Mr. Wilbon intended to plan and participate in future bank robberies. He also asked Warren for money that he used to buy crack. Warren provided him with $143 over the course of two weeks. Mr. Wilbon claims that he smoked crack every day even before receiving money from Warren. The FBI agents were aware that Mr. Wilbon was addicted to crack and that he was using the money from Warren to buy crack.

On December 12, 2006, the day that Mr. Wilbon would eventually confess to the First Bank robbery, Mr. Wilbon and Warren started driving (with Warren at the wheel) from Chicago to Wisconsin to case another bank. Mr. Wilbon claims to have smoked crack six or seven times earlier that day, including five minutes before entering the car at 4:24 p.m. Agent McCune intercepted Warren and Mr. Wilbon when they stopped at a restaurant in Wilmette for dinner. At 5:55 p.m., as Mr. Wilbon exited the restaurant's restroom, Agent McCune approached him and identified himself. During a pat-down, Agent McCune recovered a metal pipe from Mr. Wilbon's pocket. Mr. Wilbon claims that the item was a crack-pipe, but the agent did not recognize it or confiscate it. Agent McCune and another agent talked to Mr. Wilbon for about twenty minutes in one of the restaurant booths, and then Mr. Wilbon agreed to accompany them back to the FBI office.

But, once outside of the restaurant, Mr. Wilbon said he wanted to go home. Although Agent McCune said that was "fine" and that he was not charged or under arrest, Mr. Wilbon changed his mind again. Mr. Wilbon explained that he had no money and no way to get home from Wilmette. The court later found that he had received money from Warren earlier that evening and his statement to the contrary was materially false.

The agents drove Mr. Wilbon to the FBI office in Chicago, a forty-five-minute drive, where they advised him of his Miranda rights and again told him he was free to leave. At 7:55 p.m., he signed an Advice of Rights form, and then discussed the First Bank robbery. He confessed to his involvement in the robbery, but denied involvement in other robberies and refused to write out or sign a statement. During the interview, Mr. Wilbon freely used the bathroom, took two smoke breaks and called his mother twice. The agents later testified that they did not see any signs that Mr. Wilbon was under the influence of crack cocaine, or anything else, for that matter. His speech was not slurred and he was not acting erratically. At the end of the interview, and based on the confession, the agents arrested Mr. Wilbon for the First Bank robbery.

In his motion to suppress the confession, Mr. Wilbon argued that his statements on December 12 were influenced by a lengthy crack cocaine binge and were therefore involuntary. He further claimed that, by reimbursing Warren for the $143, the FBI had extracted information from Mr. Wilbon by financing his drug habit. At the hearing on Mr. Wilbon's motion, the government introduced reports from the National Institute on Drug Abuse (NIDA) and the United State Sentencing Commission's Special Report to Congress on Cocaine and Federal Sentencing Policy. The district court considered these reports, noting that they indicate that the high from smoking crack cocaine lasts only five to ten minutes and that the "physiological and psychotropic effects of inhaled cocaine are sustained for approximately thirty minutes after peak effects are attained." The court found that Mr. Wilbon last smoked crack shortly before 4:24 p.m., over an hour and a half before his restaurant interview and three and half hours before arriving at the FBI office. The government also introduced video and audio recordings of Mr. Wilbon and Warren's drive on December 12.

The district court denied the motion to suppress and held, based on the agents' testimony, that Mr. Wilbon was not intoxicated at the restaurant or the FBI office; the FBI tactics were not coercive; and there was no other reason to question the voluntariness of the confession. The court noted that in surveillance videotapes from the night of the confession, Mr. Wilbon's demeanor was no different than that he displayed while testifying. After a two-day trial, a jury convicted Mr. Wilbon of bank robbery. *See* 18 U.S.C. § 2113(a).

On appeal, Wilbon argues that the district court should have suppressed his confession as involuntary. A confession is involuntary only where it was obtained through police coercion or overreaching that prevented the accused from exercising his free will. *See Dickerson v. United States*, 530 U.S. 428, 434 (2000); *Conner v. McBride*, 375 F.3d 643, 651 (7th Cir. 2004). Intoxication, as asserted by Wilbon, is only relevant to the voluntariness inquiry if law enforcement officers reasonably should have known of its existence. *United States v. LeShore*, 543 F.3d 935, 940 (7th Cir. 2008). We review de novo the question whether a confession was voluntary and review factual determinations for clear error. *Id.* at 940-41.

First, Mr. Wilbon argues the court clearly erred in finding that he was not under the influence of crack cocaine at the time of his confession. *See LeShore*, 543 F.3d at 940. He does not dispute the court's time line of events but rather asserts that the court misread various reports about the duration of cocaine's effects. Mr. Wilbon argues that the court should have considered the NIDA report's discussion of the long-term effects of cocaine, which include losing touch with reality and auditory hallucinations, and binge usage, which can lead to a state of increasing irritability, restlessness, and paranoia. He relies on his statements at the suppression hearing that the events "didn't feel real" or "didn't make sense" to support his claim that he was intoxicated when he confessed.

The district court did not clearly error in finding that Mr. Wilbon was not under the influence or out of touch with reality during his questioning. First, the court permissibly relied on Agent McCune's testimony that Mr. Wilbon appeared coherent and did not act erratically. The court reached the same conclusion after observing audio and video recordings of Mr. Wilbon's conversations with Warren from that night. In fact, the experienced district judge noted that Wilbon's demeanor and manner of speech were the same on the witness stand at the suppression hearing as they were in the recordings of his behavior on the night of his interrogation. None of the short or long term adverse consequences of cocaine use, even binge usage, described in the NIDA or Sentencing Commission reports were observed on the evening of his interrogation. In addition, Mr. Wilbon refused to provide a written statement during the interrogation and denied his involvement in other robberies, showing independent thinking and free will. *See United States v. Smith*, 218 F.3d 777, 782 (7th Cir. 2000). Furthermore, Mr. Wilbon could recall all of the events of the day of his confession at the evidentiary hearing.

Mr. Wilbon next asserts that the district court erred in ruling that the agent's tactics did not render his confession involuntary. He claims that the agents made him dependant on their informant by financing his crack habit through Warren, manipulated him into traveling to Wilmette, and coerced him by removing all his other options for getting home. Moreover, he says the agents should have known he was high on crack after finding a crack pipe in his pocket. Voluntariness depends on whether a confession is "the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." *United States v. Gillaum*, 372 F.3d 848, 856 (7th Cir.2004) (internal quotation omitted). Other factors relevant to determine whether a confession was coerced include: the suspect's age, intelligence, education, mental state; whether he received Miranda warnings; the length and environment of the interrogation, including the suspect's access to food or a restroom; and law enforcement's conduct. *United States v. Ross*, 510 F.3d 702, 709 (7th Cir. 2007).

We apply a totality-of-the-circumstances test in evaluating voluntariness. *Gillaum*, 372 F.3d at 856. Interrogation tactics may have a greater effect on voluntariness if the officers reasonably should have known that Mr. Wilbon was under the influence of drugs or alcohol. *LeShore*, 543 F.3d at 940-41. But because the court did not clearly err in concluding that Mr. Wilbon was not under the influence of cocaine, it therefore did not err in excluding that factor from the totality-of-the-circumstances test. *See id.* at 941.

The district court did not erroneously determine that Mr. Wilbon's confession was voluntary. First, Mr. Wilbon is 42 years old, has held several jobs, and has a bachelor's degree. He makes no claim of mental disability or unfamiliarity with the criminal justice system. In fact, he has at least five felony convictions in state court. Second, the officers

told Mr. Wilbon that he wasn't under arrest at the restaurant, and they advised him of his Miranda rights when they arrived at the FBI office. Third, Mr. Wilbon used the bathroom and took multiple phone and smoke breaks during the interview. Finally, even assuming the agents provided Mr. Wilbon with cash before that evening knowing that he might spend it on crack and then cornered him at a restaurant far from his home, the court reasonably found that these actions did not overcome his free will at the restaurant because Mr. Wilbon, in fact, had money to get home and was not under the influence of crack. In any case, these tactics are not equivalent to physical punishment or deprivation of food or sleep. *See United States v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001). The court correctly found that no other factor undermined the voluntariness of the confession. Thus, the district court did not err in concluding that Mr. Wilbon's confession was not coerced.

AFFIRMED.